UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE S., <br><br>             Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br>             Defendant. | Case No.:  22-cv-1139-GPC-KSC <br><br> **REPORT AND RECOMMENDATION FOR AN ORDER AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court **RECOMMENDS** the District Court **AFFIRM** the decision of the Commissioner in this matter.

## I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits. AR 164-65.[1] The Social Security Administration denied the claim. AR 83-86. The Administration also denied plaintiff's claim upon rehearing. AR 88-92, 161-63. Plaintiff requested a hearing before an

---

[1] The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

1

Administrative Law Judge ("ALJ"). AR 99-100. Plaintiff, represented by counsel, appeared before the ALJ. AR 32-50. Plaintiff testified at the hearing, and the ALJ received testimony from a vocational expert. *See id*. After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ concluded plaintiff was not disabled. AR 28.

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant can perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 17-18. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is or is not disabled. *See* 20 C.F.R. § 404.1250(a)(4).

The ALJ first found plaintiff met the insured status requirements of the Social Security Act through a "date last insured" ("DLI") of December 31, 2024. AR 18. At step one of the five-step process, the ALJ found plaintiff had not engaged in substantial gainful activity since August 21, 2018, the alleged onset date. *Id.* At step two, the ALJ found plaintiff had the following severe impairments: "traumatic brain injury (hereinafter 'TBI') with residual neurocognitive disorder (post-concussion syndrome) and somatic disorder." *Id.* At step three, the ALJ found none of plaintiff's impairments, alone or in combination, met the severity of the listings. AR 19. At step four, the ALJ assessed plaintiff's RFC and found plaintiff could perform "light work," but could not climb ladders, ropes or scaffolds; and could not crawl or balance. AR 21. Plaintiff could "occasionally climb ramps and stairs, stoop, kneel, and crouch." *Id.* Plaintiff could not be exposed to "hazards such as unprotected heights or dangerous moving machinery." *Id.* Plaintiff could "understand, remember, and carry out simple, routine, repetitive tasks, with no production quotas or

production line work." *Id.* Finally, plaintiff was "unable to work at over a moderate level of noise." *Id.*

At step five, the ALJ concluded plaintiff could not perform past relevant work. AR 26. Given the plaintiff's RFC, age, work experience, and education, the ALJ concluded plaintiff could work as a mail room clerk, information clerk, or an office helper. *Id.* Accordingly, the ALJ concluded plaintiff was not disabled. *Id.* The Appeals Council denied plaintiff's request for administrative review. AR 1-7. Plaintiff timely filed this lawsuit.

## II. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.* Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford*, 950 F.3d at 1154 (quoting *Tommasetti*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## III. ANALYSIS OF THE COMMISSIONER'S DECISION

Plaintiff argues the ALJ failed to consider a functional capacity evaluation (FCE) report, which had been "erroneously faxed to the hearing office with the wrong cover sheet," and thereby excluded from the record. Doc. No. 14 at 6. Plaintiff nonetheless submitted the evidence—a report by Occupational Therapist Barbara Tourtellot—to the Appeals Council. AR 1-2. The Appeals Council considered plaintiff's evidence but concluded there was not a "reasonable probability" that including the evidence would have changed the outcome of the ALJ's decision. AR 2.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the

district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999)). A reviewing court will consider "evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Id.*

The substance of the new evidence is as follows: Occupational Therapist Barbara Tourtellot prepared the FCE at issue after interviewing plaintiff and subjecting plaintiff to a four-hour examination designed to mimic the stresses of interviewing for and working in an office job. *See generally* AR 1336-45. Although plaintiff generally had the physical strength and dexterity to perform relevant work, OT Tourtellot concluded plaintiff's cognitive and visual impairments rendered her effectively incapable of working. AR 1343-44. OT Tourtellot formed this conclusion after observing that 37 minutes of clerical work caused plaintiff "eye fatigue" and "brain pain." AR 1341. These symptoms made plaintiff require a break "to allow her brain to 'quiet down.'" AR 1342. After 2.5 hours of testing, plaintiff was in "cognitive overload" due to her symptoms. *Id.* Transcribing documents from paper into a computer caused plaintiff to "shut down" cognitively, such that her brain was feeling "very slow," and she suffered nausea from the strain of focusing on the transcription. *Id.* Plaintiff also exhibited memory lapses and difficulty communicating. *Id.* Trying to perform a math quiz while at the same time watching a video of a person speaking caused plaintiff to become "very fatigued" due to the "cognitive and visual demand." *Id.* After having completed the four-hour examination, plaintiff reported increased cognitive fatigue and discomfort lasting for several days. AR 1343. OT Tourtellot reasoned that, because of plaintiff's need for frequent breaks from sustained cognitive activity, plaintiff could not work. *See* AR 1343-44.

The Court will first assess whether the omitted FCE added pertinent and/or new information to the record that might have affected the ALJ's decision. At the hearing before the ALJ, plaintiff exhibited difficulty hearing loud noises without pain in her ears. AR 34.

She explained why she had stopped working, described her history of TBI, and testified she "couldn't complete" her work any longer. AR 42. Plaintiff testified she "lost the ability to read, to basically analyze," or "to use a computer." *Id.* She testified to having "memory problems" and "analytical problems." *Id.* She testified she could not be in "noisy environments" where there were multiple stimuli to process. AR 43. She testified that focusing with her eyes on anything was "extremely fatiguing." AR 44. She testified it was "taxing" to sort information with her brain. *Id.* She testified her brain was "constantly shutting down" throughout the day, which caused her to take recuperative breaks after even just a few minutes of activity. AR 45. She testified that sustained cognitive ability could overtax her brain, causing her to need up to "two-and-a-half weeks" to "decompress" and regenerate her ability to focus. *Id.* She testified about her nausea. *Id.* She testified about her inability to "process" information and about how it makes her life "slow." AR 46. In his decision, the ALJ took note of all these symptoms plaintiff identified at the hearing. AR 22. He also noted plaintiff's disability and function reports corroborated this information. *Id.*; *see also* AR 179-92; 208-19.

Based on this review of the record, the factual information about plaintiff's impairments contained in the FCE was duplicative of the information contained in plaintiff's treatment history and otherwise presented by plaintiff during the hearing. In fact, many of the impairments self-identified by plaintiff were alleged to be ***more*** serious than those identified by OT Tourtellot. For example, plaintiff's testimony at the hearing suggested she would need breaks to recuperate after only a few minutes of cognitive activity, and her function report suggested she could only work in "small increments of time" up to 10 or 15 minutes. AR 45, 214. OT Tourtellot noted plaintiff did not report "brain fatigue" until half an hour of clerical activity, and she did not reach "cognitive overload" until after 2.5 hours of testing. AR 1342-43. Thus, everything the ALJ would have learned from OT Tourtellot's report was already in the record, often to a more extreme degree, and the missing report did not add anything of substance that could have changed the ALJ's analysis.

The Court will also consider whether the ALJ's decision was otherwise supported by substantial evidence. *Brewes*, 682 F.3d at 1163. As a threshold issue here, the Court notes that claims not addressed in the plaintiff's opening brief are forfeit. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Neither party adequately addresses the substance of the ALJ's decision other than to argue the error (or lack thereof) flowing from the exclusion of the FCE. Plaintiff's opening brief focuses solely on the contents of the omitted FCE and how it is allegedly material to resolving plaintiff's case such that excluding the evidence was reversible error. Doc. No. 14 at 13-18. There is no analysis of the other aspects of the ALJ's decision. Defendant likewise focuses solely on the excluded FCE, addressing the remainder of the ALJ's decision only insofar as to note plaintiff did not challenge any of the ALJ's reasoning. *See* Doc. No. 16 at 2-4. The Court concludes plaintiff's failure to raise issues other than the exclusion of the FCE forfeit's plaintiff's right to challenge other aspects of the ALJ's decision. Because the Court has concluded there was no error in excluding the FCE, this forfeiture presents a sufficient and independent basis to affirm the final decision of the Commissioner in this matter.

Plaintiff nonetheless uses her reply brief to go beyond suggesting there was error in the record because the FCE was not included or considered. She suggests the ALJ's decision was erroneous because the ALJ did not provide "germane" reasons to "discount" the FCE. *See* Doc. No. 17 at 3-7. But this argument is circular as it begs the question of whether the ALJ considered the FCE *at all*. Indeed, it is undisputed the ALJ did *not* consider the FCE because plaintiff only submitted the evidence to the Appeals Council. Thus, the Court's review here is not focused on the ALJ's decision to disregard the FCE because there is nothing to review in that regard. Rather, as plaintiff concedes in her opening brief, the Court considers whether substantial evidence supports the ALJ's decision, with due consideration to the evidence that was submitted for the first time to the Appeals Council. *See* Doc. No. 14 at 12 (citing *Brewes*, 682 F.3d at 1163).

Although plaintiff forfeited any right to challenge the ALJ's decision outside the context of excluding the FCE, the Court will nonetheless review the substance of the

decision. The ALJ evaluated plaintiff's medical history and concluded the medical documents in the record established plaintiff's disability was not so severe as alleged. AR 23. For example, Dr. John Montague examined plaintiff and prepared a "comprehensive neuropsychological report" on September 11, 2018. AR 276. Dr. Montague subjected plaintiff to a battery of tests. AR 281. Plaintiff "performed in the range typically expected for age- and education-matched peers." AR 282. Although it was difficult for Dr. Montague to confirm whether plaintiff had any impairment caused by her TBI (as opposed to preexisting impairments, if any), or whether her TBI had exacerbated any preexisting conditions, his overall conclusion was that plaintiff "performed well within normal expectations with no sign of impairment" in the areas most likely to be affiliated with mild head trauma. AR 285. She had "normal" performance in "cognitive processing speed" and other traits relevant to work such as "attention to visual detail" and "sequential reasoning." *Id.* This is substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled.

The ALJ also evaluated the opinions of multiple consultative experts. *See* AR 25. As the ALJ noted, multiple experts had concluded plaintiff was not impaired. *See id.* The ALJ went so far as to partly reject the opinions of the consultative examiners who so concluded because the ALJ weighed the evidence in the record as a whole and determined plaintiff had at least some impairments, even if those impairments did not render plaintiff completely disabled. *Id.* The Court therefore concludes the ALJ properly relied upon substantial evidence showing plaintiff had the residual functional capacity to perform light work.

The ALJ also considered plaintiff's activities of daily living ("ADLs") as part of the decision. AR 24. Evidence related to a plaintiff's ADLs is generally of limited probative value because a plaintiff need not be confined to permanent bedrest to be deemed too disabled to work. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). As such, evidence of an ability to engage in ADLs is only probative when it is "inconsistent" with a plaintiff's testimony or where it establishes skills that can readily be transferred to the

workplace. *Id.* Here, the record showed plaintiff was able to manage her own personal finances and pay bills independently. AR 279, 1267. Although this is of limited probative value, it further bolsters the ALJ's conclusion that plaintiff had sufficient cognitive ability to perform modified work within the scope of the ALJ's decision.

As the Court has already noted, plaintiff forfeited the right to challenge the ALJ's overall assessment by not making any substantive argument on the matter other than an offhand remark in her reply brief. Notwithstanding that independently sufficient ground to affirm the final decision of the Commissioner, the Court has reviewed the ALJ's determination and concluded the ALJ relied upon substantial evidence showing plaintiff was not disabled. The FCE that was never considered by the ALJ does not rebut this conclusion. Although the FCE suggests plaintiff was disabled, the Court must consider the whole record not only the evidence favorable to plaintiff. Here, because there was ample substantial evidence to support the ALJ's decision, the ALJ's decision stands as a rational interpretation of the record as a whole and it should be affirmed. *Batson*, 359 F.3d at 1193.

## **IV. CONCLUSION, RECOMMENDATION, AND ORDER**

There was no error in the Commissioner's final decision. The Court accordingly recommends the District Court **AFFIRM** the final decision of the Commissioner in this matter. Any party may object to this Report and Recommendation on or before February 5, 2024. *See* Fed. R. Civ. P. 72(b)(2). Responses to any objections shall be filed on or before February 19, 2024. *See id.*

Dated: January 22, 2024

Hon. Karen S. Crawford
United States Magistrate Judge